**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| NORMAN R. BALL, JR., )<br><br>     Plaintiff, )<br><br>     v. )<br><br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br><br>     Defendant. )<br> ) | Case No. 4:13CV1372 JAR |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of

Social Security's final decision denying Norman R. Ball, Jr.'s ("Ball") application for disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and

supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §

1381-85.

    **I.**    **Background**

On April 29, 2010, Ball protectively filed applications for disability insurance benefits

and SSI, alleging disability beginning April 6, 2010. (Tr. 148-158) The Social Security

Administration ("SSA") denied Ball's applications on September 1, 2010. (Tr. 76-86) He filed a

timely request for a hearing before an administrative law judge ("ALJ") on December 15, 2010.

(Tr. 96-97) Following a hearing on March 9, 2012, (Tr. 36-61), the ALJ issued a written decision

on March 28, 2012, upholding the denial of benefits. (Tr. 16-35) On May 13, 2013, the Appeals

Council denied Ball's request for review of the ALJ's decision. (Tr. 1-6) Thus, the decision of

the ALJ stands as the final decision of the Commissioner.  See Sims v. Apfel, 530 U.S. 103, 107 (2000).

The Court entered a case management order on July 22, 2013, directing Ball to serve and file a brief within thirty (30) days after the Commissioner's service of an answer and the administrative transcript. (Doc. No. 5) The Commissioner's answer was filed on September 18, 2013, together with the administrative transcript. (Doc. Nos. 10, 11) More than a year has passed and Ball has failed to file a brief in support of his Complaint or take any other action in this case. The Court has, therefore, ruled on Ball's appeal based on the record before it.

## II.      Decision of the ALJ

The ALJ determined that Ball had not engaged in substantial gainful activity since the alleged onset date of April 6, 2010. (Tr. 21) The ALJ found Ball had the severe impairments of obesity and knee and low back pain. (Id.) The ALJ found Ball's medically determinable mental impairment of major depression did not cause more than minimal limitation in his ability to perform basic mental work activities and was thus nonsevere. (Id.) Other non-severe impairments were hypertension and diabetes mellitus. (Id.) The ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22)

After considering the entire record, the ALJ determined Ball has the residual functional capacity ("RFC") to perform light work, except he cannot remain in a set position; he needs to alternate sitting and standing every 30 minutes. (Id.)  The ALJ found Ball's impairments prevent him from performing his past relevant work as a welder and production worker; however, there are a significant number of jobs in the national economy that he can perform, including unskilled

bench assembler, order caller and contributions solicitor. (Tr. 29-30) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 31)

### III.     Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A.     Hearing Testimony

The ALJ held a hearing in this matter on March 9, 2012. Ball testified and was represented by counsel. (Tr. 39) Vocational expert Jeffrey F. McGrosky, Ph.D., also testified at the hearing. (Tr. 58-60)

#### 1.     Ball's testimony

At the time of the hearing, Ball was 44 years old; five feet, eleven inches tall and weighed 330 pounds. (Tr. 39-40) When he was working he weighed 220 pounds. He gained his weight over the past three years when he stopped working. (Tr. 57-58) He completed the eleventh grade. (Tr. 39-40) Ball worked most recently as a welder and also ran his own car detailing business for ten years. (Tr. 40-41)

Ball has back and knee problems. (Tr. 43) He had reconstructive surgery on his right knee when he was 16 or 18 after a motorcycle accident. (Id.) In addition, Ball has high blood pressure, diabetes and gout. (Tr. 44, 53) His legs tend to swell if he stands on his feet for over two hours at a time. (Tr. 43, 47) After resting for a while, Ball can get back up and stand. (Tr. 48) He is constantly changing positions during the day, i.e., sitting, standing, laying down, in order to take the pressure off his back. (Tr. 48-49) He can sit for about an hour before feeling the need to stand. (Tr. 54) It was Ball's testimony that he can alternately sit and stand for a maximum of three to four hours in a day. (Tr. 54-55)

Ball takes medication for his blood pressure, diabetes, and arthritis. (Tr. 46) When his blood sugar gets too low, his vision becomes blurry and he gets dizzy and faint. (Tr. 47) He has no side effects from any of his medications that he is aware of other than diarrhea from the blood pressure medication. (Tr. 57) Ball has sleep apnea and uses a CPAP machine, which helps, but because he is up and down all night with back pain, he testified that he still doesn't get enough sleep. (Tr. 49)

In a typical day Ball will get up in the morning, and try to help out around the house by washing dishes, mopping, sweeping the floors, wiping down the counters and vacuuming, but he has to take constant breaks. (Tr. 55-56) He watches TV and occasionally cooks. (Tr. 56) He is unable to do yard work. (Tr. 56) His wife does the grocery shopping and the children help her carry the groceries into the house. (Tr. 50) He used to go grocery shopping with his wife, but stopped doing that about two years ago. (Id.) Ball is able to carry light bags of groceries and a gallon of milk with a handle on it. (Id.)

According to Ball, his depression is a big factor that affects his ability to work. (Tr. 51) He takes medication for his depression, which affects his motivation to do things. He used to love to hunt and fish but now has no motivation to do either. (Tr. 52)

### 2.    Testimony of vocational expert

With respect to Ball's vocational history, McGrosky testified that Ball had past relevant work as a welder, a job that can be either skilled or semi-skilled. (Tr. 59) The ALJ asked McGrosky to assume an individual restricted to light work and able to lift twenty pounds occasionally, ten pounds frequently, who would have to alternate between sitting and standing at a workstation. (Tr. 59) Based on these restrictions, McGrosky opined that Ball could not perform his past work as a welder. (Tr. 59) However, there are jobs in the national economy that he can

perform, all light and unskilled, including bench assembler, with 2,000 jobs in Missouri and over 100,000 in the national economy, order caller, also with 2,000 jobs in Missouri and over 100,000 in the national economy, and contributions solicitor, with approximately 3,000 jobs in Missouri and 150,000 in the national economy. (Tr. 59)

The second hypothetical asked McGrosky to assume the limitations of the first hypothetical with the additional factors that the individual would have to lay down for periods of time during the day and elevate his feet because of swelling in his legs, requiring him to leave his workstation. McGrosky testified that with those additional limitations, he was aware of no competitive jobs. (Tr. 60)

### B. Medical Records

The ALJ summarized Ball's medical records at Tr. 24-29. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8ᵗʰ Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8ᵗʰ Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8ᵗʰ Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f),

416.920(a)(4)(iv), 416.920(f); <u>McCoy v. Astrue</u>, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. <u>Id</u>.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. <u>Brantley</u>, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. <u>Id</u>. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." <u>Meyerpeter v. Astrue</u>, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. <u>Pate–Fires v. Astrue</u>, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. <u>Cox v. Astrue</u>, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. <u>See Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

### V.    Discussion

In appealing the Commissioner's decision, Ball has not submitted a brief stating specific reasons why the ALJ's decision should be reversed.[1] The Court has, therefore, reviewed the record as a whole.

#### A. The ALJ's decision is supported by substantial evidence on the whole record

#### 1. Step One Finding

At Step One, the ALJ found that Ball had not engaged in substantial gainful activity since April 6, 2010, the alleged onset date of disability. (Tr. 21) This finding was in Ball's favor and is supported by his Work History Report and earnings reports. (Tr. 161-166; 181-189)

#### 2. Step Two Finding

The ALJ's conclusion at Step Two that Ball's only severe impairments were obesity and knee and low back pain is supported by substantial evidence. To show that an impairment is

---

[1] Ball is represented by counsel. He filed his appeal on July 17, 2013. (Doc. No. 1) On July 22, 2013, the Court entered a case management order stating, in part, that "[p]ursuant to E.D.Mo.L.R. 9.02, plaintiff shall unless otherwise ordered by the Court, serve and file a brief within thirty (30) days after the Commissioner's service of an answer and the administrative transcript." (Doc. No. 5) The Commissioner's answer was filed on September 18, 2013, together with the administrative transcript. (Doc. Nos. 10, 11) Ball failed to file either a brief in support of his Complaint or motion for extension of time to file a brief.

severe, a claimant must show (1) that he has a medically determinable impairment or combination of impairments, and (2) that impairment significantly limits his physical or mental ability to perform basic work activities, without regard to age, education, or work experience. See 20 C.F.R. §§ 404.1520(c), 404.1521(a). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). Symptoms "will not be found to affect [a claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). In addition, only evidence from acceptable medical sources (such as licensed physicians) can establish the existence of a medically determinable impairment. Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007).

The ALJ thoroughly explained why he found that Ball's conditions other than obesity and knee and low back pain were not severe impairments, and his finding is supported by substantial evidence in the record. The ALJ evaluated the severity of Ball's mental impairments by gauging their impact on four broad functional areas known as the "paragraph B" criteria: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3). The ALJ found no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area. (Tr. 22) If the ALJ rates the claimant's limitations as "none" or "mild" in the first three areas, and "none" in the fourth area, the ALJ will generally conclude that the claimant's mental impairments are not severe, unless the evidence indicates that there is more than a minimal limitation in the claimant's ability to perform basic work activities, which is not the case here. See Partee v. Astrue, 638 F.3d 860 (8th Cir.2011); 20 CFR § 404.1520a(d)(1). Thus, the ALJ properly found

that Ball's depression is not a severe impairment and has little effect on his ability to perform all work activities. (Tr. 21-22)

In addition, there was substantial evidence supporting the ALJ's finding that Ball's hypertension and diabetes were not severe. During the consultative examination performed in August 2010, Ball reported a history of hypertension, but was not on medical management. (Tr. 257) He did not even report hypertension during a September 2010 emergency room visit. (Tr. 254-260) The ALJ noted that the principal objective findings supporting Ball's report of diabetes included increased A1C and uncontrolled blood sugars (Tr. 325-326); however, there are no lab results indicating Ball's glucose levels or A1C. (Tr. 27) Medical treatment records indicate that Ball's high blood pressure and diabetes responded to medication, when he took it. (Tr. 238-247; 254-260; 269-292) Impairments that can be controlled by treatment or medication cannot be considered disabling. See, e.g., Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir.2009). The ALJ also noted that although Ball's obesity affects both hypertension and diabetic control, there was no evidence of record that he attempted to lose weight in order to improve his conditions. (Tr. 27)

### 3. Step Three Finding

At Step Three, the ALJ found that Ball had no impairments or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22) That finding is supported by substantial evidence. The ALJ considered Ball's musculoskeletal impairments, noting that he did not exhibit any anatomical deformity or inability to ambulate effectively. (Id.) The ALJ properly found that because the medical evidence did not establish a significant limitation in range of motion, motor loss, atrophy, or sensory or reflex loss, Ball's musculoskeletal impairments did not meet a listed

impairment. <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A) (explaining how disorders of the musculoskeletal system are evaluated for purposes of the listings). As to Ball's other severe impairment, there are no listings for obesity.[2] <u>See</u> SSR 02–1p; <u>Lewis v. Colvin</u>, 2013 WL 1283837, at *7 (E.D.Mo. Mar. 27, 2013).

### 4. RFC Finding

The ALJ's conclusion that Ball had the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), is supported by substantial evidence. A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. <u>Moore v. Astrue</u>, 572 F.3d 520, 523 (8th Cir. 2009). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. <u>See</u> <u>Myers v. Colvin</u>, 721 F.3d 521, 527 (8th Cir. 2013). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. <u>See</u> <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1994); 20 C.F.R. § 404.1529; SSR 96–7p. The Court "will defer to the ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" <u>Buckner v. Astrue</u>, 646 F.3d 549, 558 (8th Cir. 2011) (quoting <u>Wildman v. Astrue</u>, 596 F.3d 959, 968 (8th Cir. 2010)). Here, the ALJ properly formulated Ball's RFC based on all of the relevant evidence and on a careful assessment of the credibility of his subjective complaints.

---

[2] Although there is not a specific listing for obesity, obesity is a factor to be considered in determining whether a claimant's impairments "meet or equal" a particular listing. <u>Brown v. Astrue</u>, 2009 WL 88049, at *12 (E.D.Mo. Jan. 12, 2009). Here, the ALJ properly addressed Ball's obesity in itself and in combination with his other impairments in determining whether the effects of Ball's obesity would result in his impairments meeting or equaling the requirements of a Listing. Upon consideration, the ALJ found Ball's obesity did not have such an effect. (Tr. 22, 26)

First, the ALJ recognized that the medical evidence of record was consistent with an ability to perform light work. Objective medical findings did not include significant deficits in Ball's strength, neurological function, range of motion, posture, sensation, reflexes, pulses or gait. (Tr. 238-247; 254-260; 269-292) He was provided a brace for his right knee, but the treatment records do not include instructions regarding frequency of use. Exams did not reveal significant abnormalities within Ball's back or knee. X-rays showed no more than mild degenerative changes and the few imaging studies established, at most, mild abnormalities. (Tr. 259, 284, 291) There was no history of physical therapy, MRI or epidural injections. (Tr. 255) Ball was not reported to be in acute distress. (Tr. 279, 282, 286) The ALJ further noted there was no evidence that a treating physician reported Ball's obesity resulted in severe symptoms and limitations of function for twelve consecutive months, despite compliance with treatment. (Tr. 26)

Second, the ALJ properly considered the fact that Ball's allegations of pain and functional limitations were inconsistent with his treatment history and the other evidence of record. (Tr. 29) For example, Ball repeatedly complained of low back pain, but x-rays showed little wrong for the knee or the low back. (Tr. 259, 284, 291) Ball is overweight and has some leg edema, but testified at the hearing that he can perform work with a sit/stand option. (Tr. 54-55) His mental status exam check summaries did not suggest significant impairment. (Tr. 29) In addition, the ALJ observed that Ball did not appear significantly limited at the hearing. (Tr. 29)

Third, the ALJ noted a number of inconsistencies in the record which affected Ball's credibility. (Tr. 28) Ball had overall inconsistent earnings since 1996, many well below the substantial gainful activity level. (Id.) A poor work history lessens a claimant's credibility. Parsons v. Astrue, 2011 WL 4501110, at *16 (E.D. Mo. Sept. 28, 2011) (and cases cited therein).

In May 2011, Ball reported he was unemployed and filing for disability, but in September 2011, he told his psychiatrist he was unable to find work. (Tr. 315, 320) Searching for work contradicts a claimant's allegations of disability precluding all work. Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir.1995). The ALJ also considered that Ball was a smoker with a history of alcohol abuse noted on his assessment. (Tr. 255, 269, 277, 288-89) A lack of desire to improve one's ailments by failing to follow suggested medical advice detracts from a claimant's credibility. Arena v. Astrue, 2012 WL 3578719, at *11 (E.D. Mo. Aug. 20, 2012) (and cases cited therein).

In sum, the ALJ's RFC decision is supported by substantial evidence on the record as a whole, including the medical evidence and the ALJ's analysis of the credibility of Ball's subjective complaints.

## 5. Step Four Finding

The ALJ's finding at Step Four that Ball could make a successful adjustment to other work is supported by substantial evidence. The vocational expert testified that a hypothetical individual restricted to light work and able to lift twenty pounds occasionally, ten pounds frequently, with a sit/stand option could not perform his past work as a welder; however, there are jobs in the national economy that he can perform, all light and unskilled, including bench assembler, order caller, and contributions solicitor. (Tr. 59) If an individual can perform all or substantially all of the exertional demands at a given level of exertion, then he is not disabled. SSR 83-11; Walker v. Astrue, 2009 WL 586585, at *21 (E.D. Mo. Mar. 6, 2009). In addition, the testimony of a vocational expert in response to a properly formulated hypothetical question constitutes substantial evidence. See, e.g., Weiler v. Apfel, 179 F.3d 1107, 1111 (8th Cir. 1999). Here, the ALJ's hypothetical question accurately reflected the RFC of light work. Thus, the

ALJ's conclusion that Ball could make a successful adjustment to other work is supported by substantial evidence.

### VI. Conclusion

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Ball is not disabled and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSSED** with prejudice. A separate judgment will accompany this Order.

Dated this 29th day of September, 2014.

                                    _____

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**